Moncure, J.
delivered the opinion of the court.
After stating the case, he proceeded :
The issue upon the plea of payment was not tried; and it would be necessary on that ground, if no other, *223 to reverse the judgment. Wilson v. Davisson, 5 Munf. 178. But as, in that case, the cause would have to be remanded for further proceedings; and as a reversal of the judgment on the ground of error in sustaining the demurrer would put an end to the cause, it is proper to determine whether the judgment is erroneous in that respect.
The replication is in the general form prescribed by the act passed January 17th, 1844, entitled “ An act simplifying the proceedings in cases of usury,” Sess. Acts, p. 54. That act, in its terms, applies only to a plea; and a question was raised at the bar, whether it is also applicable to a replication to a plea of setoff. We are of opinion that it is; and that a plea of setoff, being in the nature of a cross action, a replication thereto is the same thing, in substance, with a plea to an action.
It was rightly conceded by the counsel for the appellee in this case, that the bond on which the suit was brought was subject in the hands of the sheriff Smith, to all the setoffs which the obligor had against it at the time the oath of insolvency was taken ; and also that if Grant the obligee had sued on the bond, he would have been precluded by the judgments pleaded as setoffs, from replying usury in the bonds on which the judgments were obtained. But the counsel argued that the rights of the sheriff were fixed by the oath of insolvency, and could not be affected by anything done or suffered by the insolvent afterwards: and that as, at that time, judgments had not been obtained (though suits had been brought) on the assigned bonds, the judgments obtained after-wards, (though obtained before the suit was brought by the sheriff on the bond of Hope,) could not prevent the sheriff from replying that the bonds on which the judgments were obtained were usurious.
It is unnecessary to consider in this case, whether *224 the doctrine, said to have been declared in De Wolf v. Johnson, 10 Wheat. R. 367, and denied in Lloyd v. Scott, 4 Peters’ R. 205, that “the purchaser of an equity of' redemption cannot set up usury as a defence to a bill brought by the mortgagee for a foreclosure, especially if the mortgagor has himself waived the defence,” was recognized and confirmed in Crenshaw's adm'r v. Clark, 5 Leigh 65, and Spengler v. Snapp, Id. 478; nor whether or how far the plea of usuiy is a defence personal to the debtor, and may be waived by him. For, conceding that if no judgment had been obtained upon the assigned bonds, Smith might have replied usury to a plea of the bonds as setoffs, we are still of opinion that he is as much concluded by the judgments from going behind them, and replying usury in the bonds, as the insolvent himself would have been if the suit had been brought by him. If Hope had obtained his judgments by a fraudulent arrangement with Grant to prevent the sheriff from setting-up the objection of usury to the bonds, the case would have been very different. But no fraud is imputed to Hope in obtaining the judgments, and he appears to have been guilty of none. He may have had good reason for instituting suits on the bonds, instead of holding them up to be used as setoffs in any suit that might be brought on his bond. They were assigned bonds, and due diligence might have required the institution of the suits in order to fix the liability of the assignors. They exceeded his bond in amount, and suits were necessary to recover the excess. He instituted the suits some time before the oath of insolvency was taken; which of itself would seem to repel any imputation of fraud. Considering it necessary or proper to bring the suits, which were pending when the oath was taken, What was he then to do ? The same reasons which induced him to bring the suits, required him to prosecute them. He could not-sue *225 the sheriff, nor make him a party to the pending suits. He had a right, therefore, to prosecute them to judgment, and set off the judgments against his bond, whether in the hands of Grant or of his legal assignee the sheriff, who stands in his place. If Grant had pleaded usury and succeeded, or had made any other successful defence in the suits, the judgments in his favor would certainly have concluded Hope from setting up the bonds as setoffs in the suit brought on his bond by the sheriff. There would seem to be at least as much reason for holding that the judgments which were rendered against Grant, concluded the sheriff from going behind them and objecting that the bonds are usurious. That the judgments were rendered by non sum informatus, can make no difference. The defendant Grant set aside the office judgments and obtained continuances by putting in pleas of payment for that purpose: and at the succeeding term waived his pleas and suffered judgments to be rendered against him. This is a common course of proceeding where a defendant has no real defence, or bona fide intends to make none, and only wishes to obtain time. A judgment so rendered as much concludes a defendant in a suit or scire facias on the judgment, as does a judgment rendered in a case in which the matter was put directly in issue and passed upon by the jury. What the rights of Hope would have been, if, before he obtained his judgments against Grant, the sheriff had sued him on his bond, or summoned him as a garnishee under the statute, it is unnecessary to decide, as no-such proceeding was instituted until more than three years after the judgments were obtained.
The views we have taken of this case are strongly sustained by the Supreme court of Massachusetts in the case of Smith v. Stearns, 19 Pick. R. 20. That case arose under a statute of that state which authorizes an attachment by what is called the trustee *226 process: The person being called “trustee” who, by our law, would be called a garnishee. The effect of - the service of the process in giving the plaintiff a lien on the debt due by the trustee to the principal defendant, being the same, as it seems, with that of the service of an attachment on the garnishee with us. In that case the trustee obtained judgment after, on a note given to him before, he was summoned as trustee; and the question was, whether the judgment was conclusive, or its merits could be enquired into, in the suit of the attaching creditor. Shaw, C. J., in delivering the opinion of the court, among other things said, “It is clearly held as the construction of the trustee process, that where one is chargeable in consequence of being the debtor of the principal, the question will be, whether he holds any balance upon a liquidation of all demands. In striking such balance, he has a right to set off from the debt which he acknowledges he owes the principal, any demand which he might set off in any of the modes allowed either by statute or common law, or in any course of proceeding.”—“ The trustee ought not to be placed in a worse situation than he would be in if the principal had sued him for the debt.”—“It has been argued that the trustee’s liability must depend upon the state of facts as it existed when the trustee process was served. This is not strictly correct. Some liability must exist at that time in order to charge him; but that liability may be greatly modified and even discharged by subsequent events.” The chief justice then states a variety of instances in which the liability would be so modified or discharged, and proceeds : “ In the application of these principles to the case before us, we think that the trustee had a right to set off against the debt due by him to Smith jr. the judgment which he had recovered against Smith jr. on demands shown by the answers to have existed prior to the service of the *227 trustee process. The judgment thus obtained did not create, but only ascertained and liquidated, the debt. The judgment was not conclusive, because it was competent for the plaintiff to show, if he could, by the answers of the trustee, that the judgment set forth in his answers, was collusive or fraudulent, or obtained on demands acquired subsequently to the attachment; and he had a right to put interrogatories to the trustee with a view to such answers. But if not collusive or fraudulent, the trustee had a right to set it off against the demands which he acknowledged that the principal had against him, and for this purpose to disclose it in his answers and insist upon it in his defence. This follows from the principle above stated, because he would have had a right to set it off in any suit of the principal against him.” The court had some doubt as to whether the trustee had a right to set off the costs of his judgment, because they accrued after he was summoned as trustee; but was of opinion that they were to be considered as a component part of the judgment as one of its incidents; there being nothing to show that the suit was not brought in good faith, nor that the costs were incurred unnecessarily. We think these views are sound, and are at least as conclusive of this case as of that in which they were delivered. This is a stronger case than that; for there the suit was brought by the trustee after the attachment was served upon him.
■ We think the demurrer to the rejoinder ought to have been overruled; and we. are, therefore, for reversing the judgment and rendering judgment for the plaintiff in error, who was the defendant in the court below.
Judgment reversed.